**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM MADISON,<br><br>Plaintiff,<br><br>v.<br><br>ARENA EVENT SERVICES, INC., *d/b/a Arena Americas*,<br><br>Defendant. | Civil Action No. 25-17092 (SDW) (CF)<br><br>**OPINION**<br><br>October 27, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant Arena Event Services, Inc.'s ("Defendant" or "Arena") Motion to Dismiss, (D.E. 24 ("Motion")), Plaintiff William Madison's ("Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts[2]

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein, unless otherwise indicated.

[2] Notwithstanding his reliance on the language of the Sales Commissions Plan and various mentions of the September 17, 2025 e-mail throughout his Second Amended Complaint, (*see* D.E. 26 at 15 (Sales Commission Plan), D.E. 22 ¶¶ 18–21 (e-mail)), Plaintiff failed to include either as attachments to the SAC. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim[s are] based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This Court considers the Sales Commissions Plan and September 17, 2025 e-mail—

Plaintiff worked for Arena as a "National New Business Development Manager" from August 2014 through September 17, 2025. (D.E. 22 ("SAC") ¶ 6.) Per Arena's Sales Commission Plan (hereinafter, "the SCP")—which Plaintiff executed on June 5, 2023—Plaintiff's annual base salary was $180,000 and he could earn 3 percent and 3.5 percent in commissions on existing and new business, respectively. (D.E. 16, Ex. 2 at 27.) The SCP defined "Commissionable Sales" as "pre-sales tax contract amount less any non-commissionable rental groups or rental items, paid in full within 90 days of the Contract Closing Date." (*Id.* at 25.) The SCP contains the following provision regarding commission payments:

> Commissions are earned after the Sales Representative has performed all duties necessary to complete a sale and effectuate payment, and when payment in full is received by AES provided that payment in full is received by AES within 90 days of the sales contract closing date. Commissions will not be earned or paid on sales for which payment has not been received in full as of the effective date of Sales Representative's termination or resignation . . . Upon termination or resignation, all earned Commissions that are capable of being determined as of the date of termination/resignation shall be paid as of the effective date of termination.

(*Id.*)

While at the Ryder Cup Installation on September 11, 2025, Plaintiff and his supervisor, George Strickland, began to discuss Arena's incoming business accounts and how they would be managed. (SAC ¶¶ 11–12.) Plaintiff "emphasized that his compensation structure had to be fair" and noted Arena "could not attempt to deny him commissions in the future," by redirecting or recategorizing them as "house accounts," as it had done in the past. (*Id.* ¶ 13.) Plaintiff told Mr. Strickland, "I'm concerned that what happened last year [denied commissions], will happen again.

---

supplied elsewhere in the record—without converting this Motion into one for summary judgment. *See id.* (explaining that while a district court cannot generally "consider matters extraneous to the pleadings" on a motion to dismiss, "a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment'" (alteration in original) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996))); *see also Brown v. HSBC*, No. 24-8025, 2025 WL 947728, at *1, 3 (D.N.J. Mar. 28, 2025) (considering compensation package document and deferred shares vesting schedule directly referenced in, but not attached to, complaint).

I have no interest in going anywhere else, but I can't experience attempted denied commissions again," (*id.* ¶ 15 (alteration in original)), to which Mr. Strickland allegedly responded, "If you're so unhappy, maybe you should quit," (*id.* ¶ 17).

Less than a week later, Plaintiff memorialized his concerns in an e-mail to Mr. Strickland. (*Id.* ¶ 18.) Regarding commissions, Plaintiff wrote: "Projects are being internally redirected, blocked, or classified as 'house accounts' to avoid paying commission, preventing me (and others) from contributing to work we are best positioned to deliver." (*Id.* ¶ 19; D.E. 15-2, Ex. B at 11.) Plaintiff claims that later that same day he met Mr. Strickland in the Melville Marriott's lobby "under the guise of discussing his future compensation," only to be terminated. (SAC ¶ 22.)

Sharlane Sanchez, Group Executive Vice President of HR, also met Plaintiff in the lobby, handing him a copy of his non-compete agreement and a letter from Arena's lawyer discussing "post-termination obligations to Arena." (*Id.* ¶¶ 22–23.) "Neither Mr. Strickland nor Ms. Sanchez provided a specific reason for Plaintiff's termination of employment and remained solely focused on his post-termination responsibilities." (*Id.* ¶ 26.) Ms. Sanchez told Plaintiff, "We'll pay you commissions due as of yesterday and insurance though end of month." (*Id.* ¶ 24.) Plaintiff alleges that at the time of termination, he "had sizeable commissions about to vest as well as actual earned commissions that were not paid out to [him]." (*Id.* ¶ 29.)

**B. Procedural History**

On October 31, 2025, Plaintiff initiated the instant lawsuit against Arena pursuant to 28 U.S.C. § 1332.[3] (D.E. 1.) Plaintiff's Second Amended Complaint is the operative pleading and asserts underpayment and retaliation claims pursuant to New Jersey's Wage Theft Act

[3] Section 1332 vests district courts with original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

("NJWTA"), N.J. Stat. Ann. §§ 34:11-58.1 to -58.6, and the WTA's amendments to the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. §§ 34:11-4.1 to -4.15.[4] (SAC at 4–6.)

On May 1, 2026, Defendant moved to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). (D.E. 24.) The parties timely completed briefing. (D.E. 26, 27.)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

[4] "[T]he Wage Theft Act strengthened the protections afforded under the Wage Payment Law, by creating an express private right of action for employer violations and authorizing the recovery of liquidated damages and attorney's fees." *Musker v. Suuchi, Inc.*, 318 A.3d 692, 695–96 (N.J. Super. Ct. App. Div. 2024), *rev'd on other grounds*, 331 A.3d 900 (N.J. 2025).

A complaint must apprise the defendant with "fair notice of what the claim is and the grounds upon which it rests," containing "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When a plaintiff pleads factual content that enables the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## III. <u>DISCUSSION</u>

The NJWPL is a "remedial statute" that "governs the time and mode of payment of wages due to employees." *Musker*, 331 A.3d at 905 (quoting *Maia v. IEW Constr. Grp.*, 313 A.3d 887, 895 (N.J. 2024)). The NJWPL provides that "[n]o employer may withhold . . . any portion of an employee's wages," save certain enumerated exceptions, and that "[w]henever an employer discharges an employee . . . the employer shall pay the employee all wages due not later than the regular payday for the pay period during which the employee's termination . . . took place." N.J. Stat. Ann. §§ 34:11-4.3, -.4.4. Wages are defined as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." *Id.* § 34:11-4.1(c). Per that definition, "compensating an employee by paying a 'commission' for 'labor or services'

always constitutes a wage under the WPL." *Musker*, 331 A.3d at 181. "If an employer violates the NJWPL, an employee may seek damages in a private cause of action." *Id.* at 905.

In their briefing, the parties argue over whether the commissions allegedly owed to Plaintiff constitute "wages" or a "supplementary incentive" under the WPL, effectively putting the cart before the horse. Here, the Second Amended Complaint is pleaded generally and baldly with Plaintiff failing to set forth what he was paid upon termination, let alone what he is allegedly owed in commissions. Thus, not only do the facts alleged in the complaint insufficiently show that Plaintiff has a plausible claim for relief, but they also fail to establish that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). In fact, the SAC is wholly devoid of a specific amount in controversy. It follows that this matter must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."). The Second Amended Complaint is hereby dismissed without prejudice.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion is **GRANTED**. Plaintiff shall have thirty (30) days to amend his complaint. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Cari Fais, U.S.M.J.